UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GISELA O., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF THE <br> SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Case No. ED CV 19-674-PJW <br><br> MEMORANDUM OPINION AND ORDER |

## I.

## INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying her application for Disability Insurance Benefits ("DIB"). She claims that the Administrative Law Judge ("ALJ") erred when he rejected her testimony and ignored the medical evidence in finding that she was not disabled. For the reasons explained below, the ALJ's decision is affirmed.[1]

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, the current Commissioner of the Social Security Administration, is substituted in as Defendant.

II.

SUMMARY OF PROCEEDINGS

In March 2016, Plaintiff applied for DIB, alleging that she had been disabled since November 2015, due to degenerative disc disease in her lumbar spine, arthritis, and chronic kidney disease. (Administrative Record ("AR") 66-67, 172-177.)  Her records later reflected that she also suffered from depression, bipolar disorder, carpal tunnel syndrome, urinary tract infections, and GERD.  (AR 18.) Her application was denied initially and on reconsideration and she requested and was granted a hearing before an ALJ.  (AR 88-92, 98-99, 100-104.)  In March 2018, Plaintiff appeared with counsel and testified at the hearing.  (AR 41-58.)  In June 2018, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 13-28.) Plaintiff appealed to the Appeals Council, which denied review.  (AR 1-3.)  This action followed.

III.

ANALYSIS

A.   Plaintiff's Testimony

Plaintiff testified at the administrative hearing that she was incapable of working due to depression and low back pain that radiated into her left leg.  She explained that, due to her impairments, she rested in bed 70 to 75 percent of the day, was unable to sit for more than 10 to 15 minutes, and was unable to stand or walk for more than 30 to 60 minutes.  (AR 43, 45, 49.)

The ALJ rejected this testimony, finding: (1) Plaintiff's testimony was inconsistent with the medical evidence, (2) her treatment had been conservative and effective, and (3) her ability to travel to the Dominican Republic in 2017 undermined her claim that she

could sit for only 10 to 15 minutes at a time.  (AR 21-26.)  Plaintiff contends that the ALJ erred in doing so.  For the following reasons, the Court concludes that the ALJ did not err.

Generally speaking, the reasons cited by the ALJ for questioning Plaintiff's testimony are valid reasons for doing so.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (noting ALJ can consider objective medical evidence in evaluating claimant's credibility); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits.") (citations omitted); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (noting evidence of conservative treatment can undermine a claimant's testimony about the severity of an impairment); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (explaining a claimant's activities bear on credibility where the level of activity is inconsistent with the claimed limitations).  And these reasons are largely supported by the record.

The ALJ discussed the medical evidence in detail and found that it was inconsistent with Plaintiff's claims of debilitating physical and mental impairment.  (AR 21-26.)  Although the ALJ recognized that Plaintiff suffered from depression and bipolar disorder, he found that the medical records reflected an overall improvement in her condition, as well as "unremarkable" and "mild-moderate" findings during mental status examinations, which did not support her claims of disabling mental health symptoms.  (AR 23-26.)

In general, the record supports the ALJ's findings.  Although Plaintiff was hospitalized for depression and suicidal ideation in September 2016, she was discharged six days later after taking

medication that improved her condition.  (AR 516-518, 542-543.)  Since then, the health care providers who conducted mental status examinations on her regularly reported that her mood and behavior were normal and appropriate, without any signs of distress.  (AR 571, 634-651, 680.)  Though she sometimes experienced anxiety and fluctuations in her depression, these symptoms improved with changes to her medication.  (AR 574-579, 634-651.)

In January 2018, two months before the administrative hearing, her mood and affect were appropriate, her psychotropic medication helped her feel better and sleep well, and her bipolar disorder was stable.  (AR 680.)  And, despite testifying that her depression caused her to rest for 70 to 75 percent of her day, Plaintiff never reported this to her doctors.

The Court finds that the ALJ's discounting of Plaintiff's allegations of pain in her low back and left leg is a closer call. The ALJ noted "unremarkable" and "generally mild" findings in the medical records, including no focal neurological deficits, normal gait, full muscle strength, and no difficulties with movement observed by doctors, which, he found, undermined her claims that she was severely limited in her ability to stand, walk, and sit.  (AR 22-25.) The records do reflect a series of normal physical examinations of her low back and lower left leg, despite her consistent diagnoses of severe degenerative disc disease in the lumbar spine with moderate to severe disc height loss and moderate to severe foraminal stenosis. (AR 303-304, 312-313, 564, 589, 594, 611, 617-620, 623-624, 625-628.) But the ALJ overlooked other medical records in 2016 and 2017 that indicate that Plaintiff exhibited reduced muscle strength in her left leg and tenderness and neurological deficits in her lumbar spine.  (AR

303, 487, 611, 657.)  The medical records also support Plaintiff's contention that she consistently complained of low back pain, requiring rest.  (Joint Stip. at 6; AR 285, 323, 345, 484.)

Similarly, the ALJ pointed to the lack of atrophy in Plaintiff's lumbar region and left leg as support for his finding that she was not in as much pain as she claimed to be, since her muscle strength was not significantly altered.  (AR 25.)  The ALJ did not cite to anywhere in the medical records that discusses muscle atrophy, however, and, to the extent that he was relying on Plaintiff's own reported muscle strength to find a lack of atrophy, the records are inconsistent.

Nevertheless, even though the medical records reflect that Plaintiff's low back pain may have been more serious than the ALJ described, they do not support the limitations claimed by Plaintiff. Significantly, her treating physicians did not opine that she had any functional limitations, let alone the significant limitations she alleged.  And, as the ALJ noted, his findings regarding her medical records were consistent with the opinions of the reviewing physicians, who provided the only medical opinions regarding Plaintiff's ability to work.  (AR 25.)  After reviewing the medical records, these doctors determined that she could perform light work with some occasional postural restrictions, despite her impairments.  (AR 66-74, 76-86.) Thus, on the whole, there is substantial evidence to support the ALJ's view that the medical evidence did not support Plaintiff's claims of debilitating impairment.

The ALJ also discounted Plaintiff's testimony because the treatments for her low back pain, depression, and bipolar disorder were conservative and effective.  The record supports this finding for Plaintiff's depression and bipolar disorder.  Following her

5

hospitalization in 2016, her treatment consisted solely of medication and therapy, which she reported helped resolve any symptoms of anxiety and depression. (AR 574-579, 634-651.) In January 2018, she reported that her prescription psychotropic medication, Seroquel, had helped her feel better, and it was noted that her bipolar disorder was stable. (AR 680.)

As for her low back pain, the Court disagrees with the ALJ's characterization that her treatment was routine and conservative. In addition to medication to manage her pain, Plaintiff underwent repeated medial branch blocks, radial frequency ablations, and epidural steroid injections in her lumbar spine. (AR 285-290, 306-309, 484-488, 495-498, 509-510, 654, 660-664.) The Court does not consider such treatment to be conservative or routine. Moreover, Plaintiff's treating physician recommended surgery for her lumbar spine but Plaintiff's insurer denied her request for the procedure. (AR 628-630.) The ALJ interpreted this denial as evidence that she did not need it. (AR 24; Joint Stip. at 21.) The Court rejects this finding. The fact that her insurance company denied her request to pay for the surgery does not, in the Court's view, establish that the doctor was wrong and the insurance company was right.

The ALJ's finding that treatment controlled Plaintiff's pain, however, is generally supported by the record. She reported pain relief, lasting from about two to six months, from the epidural steroid injections. (AR 44, 656.) After radial frequency ablation in April 2016, she told her doctor that she felt relief and her symptoms were manageable. (AR 493.) Plaintiff further reported that her pain medication alleviated her pain by 60 percent. (AR 43, 654.) In July

2017, she told her doctor that she was "doing well with no new complaints or concerns." (AR 610.)

Plaintiff argues that the ALJ's functional capacity determination failed to account for the side effects of her medications, which she alleged caused dizziness and drowsiness. (Joint Stip. at 17.) This argument is rejected. The ALJ considered her testimony about side effects but found that it was undermined by the record, which showed that she had never reported any side effects to her treating physicians. (AR 24-25.) This finding is supported by the medical record.

Finally, the ALJ found that, because Plaintiff was able to fly from California to the Dominican Republic in December 2017, she was able to sit for longer than 10 to 15 minutes, as she claimed at the hearing. (AR 25.) The ALJ did not err in doing so. The fact that Plaintiff took an approximately seven-hour flight to the Dominican Republic calls into question her claim that she could only sit for 10 to 15 minutes at a time. Though a single trip is not enough to establish she could sit for eight hours a day at work, the ALJ did not err in taking it into account that she had taken the flight(s) when assessing her testimony.

In the end, the Court concludes that there is substantial evidence in the record to support the ALJ's finding that Plaintiff's claims were exaggerated and it is affirmed. *See Carmickle v. Comm'r, Soc. Sec.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

B. <u>Objective Medical Evidence</u>

Plaintiff argues that the ALJ failed to consider relevant medical evidence in determining her residual functional capacity. (Joint Stip. at 4-8.) As discussed above, the Court finds that the ALJ

properly considered the medical evidence.  There is nothing in Plaintiff's medical records that establish that she cannot work or that she needs additional accommodations beyond those found by the ALJ.  None of her doctors opined that she could not work.  Indeed, the only medical opinions that discuss Plaintiff's ability to work are from the reviewing physicians and they both found that she could work.  (AR 66-74, 76-86.)  The ALJ gave great weight to these opinions and modeled his functional capacity finding on them.  (AR 20, 25.)  In considering Plaintiff's mental health, the ALJ also gave partial weight to an examining psychiatrist who determined that Plaintiff was precluded from high production, assembly-line type work.  (AR 26.)  Nothing in the medical evidence is inconsistent with the ALJ's residual functional capacity finding.  Therefore, the ALJ decision that Plaintiff had the residual functional capacity to perform light work with some limitations will not be disturbed.[2]

---

[2] Plaintiff contends that the ALJ improperly characterized her carpal tunnel syndrome as nonsevere and argues that, if she were to resume working, she would experience symptoms.  (Joint Stip. at 7.)  At the administrative hearing, however, counsel only raised Plaintiff's carpal tunnel in passing and Plaintiff never brought it up during her testimony.  (AR 40, 41-58.)  Thus, it appears that Plaintiff did not believe then that it was an obstacle to her working.  Nevertheless, as the ALJ noted, the medical evidence shows that her carpal tunnel condition was treated effectively and, as a result, she rarely mentioned it to her physicians after 2016.  (AR 19.)  That is probably why her treating physicians never recommended any limitations or opined that she was unable to work due to her carpal tunnel.  (AR 506-508, 545-546.)

IV.

CONCLUSION

For the reasons set forth above, the Agency's decision is affirmed and the case is dismissed with prejudice.

IT IS SO ORDERED.

DATED: May 15, 2020.

                                         _____
                                         PATRICK J. WALSH
                                         UNITED STATES MAGISTRATE JUDGE

O:\PJW\ECF Ready\Memo Opinion and Order.wpd